## Baltimore & O. S. W. Ry. Co. v. Mary H. Alsop, Adm'x.

1. PRACTICE—*Waiver of Motion for Instruction to Find for Defendant.*—A request by a defendant, made at the close of plaintiff's evidence in chief, for an instruction to find for the defendant is waived if the defendant introduces evidence to meet that of the plaintiff, and after the evidence is closed does not renew the motion, but asks and secures instructions covering the entire case.

2. RAILROADS—*Care Required of Night Watchman of Track.*—There is no rule of law holding a night watchman of a railroad track to a greater degree of care for his own personal safety than is usually exercised by careful, prudent persons under the same circumstances.

3. SAME—*Running Train at Night Without Headlight.*—A railroad company which runs a train at night without a lighted headlight is guilty of negligence and is responsible to persons who, while in the exercise of ordinary care, are injured in consequence of such failure.

4. ORDINARY CARE—*How Shown.*—In an action by the administrator of a person alleged to have been killed by the negligence of the defendant, evidence that the deceased was a temperate, quiet, careful man, is admissible, and in the absence of evidence that the deceased had changed, justifies a jury in believing that he was in the exercise of due care for his own safety at the time of his death.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Effingham County; the Hon. SILAS Z. LANDES, Judge, presiding. Heard in this court at the February term, 1897. Affirmed. Opinion filed September 10, 1897.

PALMER, SHUTT & LESTER, and WOOD BROS., attorneys for appellant.

JAMES W. and EDWARD C. CRAIG, and E. N. RINEHART, attorneys for appellee.

MR. JUSTICE BIGELOW DELIVERED THE OPINION OF THE COURT.

This action was brought by appellee to recover for the death of her intestate, by being run over by a train on appellant's road, on the night of February 11, 1895.

Deceased was a night track-watchman on a section of about seven miles of appellant's road, one-half north and

the other half south of Beecher City. His duty was to go over the section of road each night and see that it was not obstructed, repair broken rails, and generally to see that the road-bed was in condition for the safe passage of trains. Some of the time he walked, and some of the time he rode on a small three-wheeled hand-car, usually termed a railroad velocipede, owned and kept by the railway company at Beecher City.

About eleven o'clock at night, of the date before stated, it was cold and as he was returning from the south end of his beat on the velocipede, toward Beecher City, and while passing over a long line of trestle-work which had been filled in with earth to within about two feet of the top, he was run over and killed by a freight train of appellant, going the same way he was, and which was running at a speed of about twenty miles an hour, and was about half an hour ahead of regular time. He was forty-seven years of age, a temperate, careful man, and left a wife and five children dependent upon him for support.

It is alleged in the declaration, as one of the grounds for a recovery, that the headlight of the locomotive was not burning.

Plaintiff below recovered a judgment for $4,500, from which defendant appealed, and assigns eight errors, the most of which, however, have not been noticed in the brief and argument of appellant's counsel; hence, they need no consideration here.

At the close of plaintiff's evidence, defendant moved the court to instruct the jury to return a verdict for defendant, which was denied by the court, and defendant excepted, and this ruling of the court is assigned as error. Since defendant, after the ruling on the motion, elected not to stand by it, but introduced a large amount of evidence to meet that of plaintiff, and after the entire evidence in the case was closed, did not renew the motion, but asked and secured instructions to the jury, covering the entire case, as viewed by appellant's counsel, it must be presumed that the motion was waived. In passing on this question the

Supreme Court of this State in the case of J. A. & N. Ry.
Co. v. Velie, 140 Ill. 59, say : " Where a defendant, whose
motion to exclude plaintiff's evidence, made as soon as
plaintiff rests, is overruled, fails to stand by such motion,
or to renew it when all the testimony is in, or to request
that the jury be instructed to find for the defendant, but
introduces testimony of his own to contradict the case made
by the plaintiff, and requests that the jury be instructed to
pass upon the issues involved and to determine them
according to the preponderance of evidence, he therefore
waives his right to objection to the action of the court in
overruling his motion, and is estopped from assigning such
action as error in a court of review." That case has since
been followed by Chicago City Railway Co. v. Van Vleck,
143 Ill. 480 ; Ames & Frost Co. v. Strachurski, 145 Ill. 192,
and Harris v. Shebek, 151 Ill. 287, and the rule laid down
in these cases may now be said to be firmly established.

It is insisted by counsel for appellant that plaintiff's
entire series of instructions are predicated on an erroneous
view of the law. The ground of this contention is that
the court assumed the deceased was only bound to exercise
ordinary care under the circumstances in which he was
placed, while it is insisted the law required that he should
exercise the highest degree of care for his own personal
safety, and so should have gone on foot—not worn an over-
coat or protected his ears from freezing by wearing a scarf
over his head or around his neck, and especially should not
have used a railroad velocipede.

We know of no rule of law holding a night watchman of
a railroad track to a greater degree of care for his own per-
sonal safety than is usually exercised by careful, prudent
persons under similar circumstances. Any such rule as
seems to be contended for would be unjust toward a class
of persons who, through darkness, storm and frost, often
peril their own lives to save the lives and property of
others.

Appellant's evidence shows that appellant knew deceased
was in the habit of using the velocipede to carry himself

and tools over his beat.   It was the property of appellant, and was kept in the section house at Beecher City, and we think from the evidence of appellant's witnesses that the court might fairly assume, if necessary, that the contract of service by appellee's intestate included the furnishing of the velocipede by appellant.

It does not appear from the evidence that the velocipede was in any way instrumental in causing the accident, or that deceased would not have met the fate he did, had he been walking, instead of riding on a car propelled by himself.   That a watchman of a railway track, whether walking or riding over it, should exercise greater care and caution for his own safety than when traveling on the public highway, is undoubtedly true.   But one watchman of a railroad track, whose duties are the same as hundreds of other persons engaged in the same employment, should not be held to a greater degree of care than the careful, prudent and cautious of these other hundreds, and that is what the jury were told by the instructions, and we are unable to see wherein they are wrong.   To say that deceased should not have worn proper clothing, to keep him from freezing while performing his duties, is going beyond the law.   The law does not require an humble employe on a railroad to offer himself a vicarious sacrifice to save even the wrecking of a freight train.   The fact that deceased did protect himself from the inclemency of the weather, instead of showing that he was careless, shows the reverse.

It is insisted on the part of appellant that it is not negligence for a railroad company to run its trains at night without a headlight burning, and the case of McDonald v. New York C. & H. R. R. Co., 138 N. Y. 663, is cited as supporting this somewhat startling proposition.   Turning to the case, we find it was an appeal from an order of the general term of the Supreme Court of New York, which reversed an order denying a motion for a new trial.   What the Court of Appeals said in deciding the case is brief, and we cite it entire:  " Agree to affirm order, and for judgment absolute for defendant, on stipulation; no opinion.

All concur except Andrews, Ch. J., not voting. Order affirmed and judgment accordingly." Whether the parties correctly stipulated what the law governing the case was, we have no means of knowing.

It is insisted the evidence fails to show that deceased was in the exercise of ordinary care at the time of the accident. It is true there is little direct evidence as to the matter on either side, but plaintiff's witness, Jennings, who had known deceased well for about thirty years, and who was closely associated with him some five years, testified that he was a temperate, quiet, careful man.' Such men do not often become reckless and careless, after years of carefulness, and in the absence of evidence showing that deceased had changed, the jury were warranted in believing he was in the exercise of due care for his own safety at the time of his death. It may be further said that, had he been other than a careful, reliable man, he would, in all probability, not have remained long in the service of appellant as night watchman.

It is insisted by appellant that the verdict is unsupported by the evidence. There is no dispute about the fact that the train was running half an hour ahead of time, but there is a conflict in the evidence as to whether the headlight was burning.

The engineer testified that it was lighted at Flora, about 9 o'clock, and he is partially corroborated by a brakeman on the train. On the other hand, Fred Barnes, a traveling man, testifies that he was at Altamont, a station ten or twelve miles southeast of Beecher city, where he had gone on defendant's road; that at the time the train, which killed Alsop, pulled into Altamont, it had a head lamp, but it was not burning. He says he observed it particularly. No witness testifies that the lamp was lighted after the train stopped at Altamont. With evidence of this character before the jury, it can not be said their verdict was against the weight of the evidence. Since it is the province of the jury to weigh it and say which way it preponderates, their finding is binding on this court, and the judgment will therefore be affirmed.