## Home Building & Loan Association v. George D. McKay, et al.

### Gen. No, 4,469.

1. USURY—*members of homestead loan association may rely upon defense of.* It is settled law in this state that a borrowing member of a homestead loan association may set up usury as a defense to the foreclosure of a mortgage against him by such association.

2. USURY—*when defense of, established as against homestead loan association.* Where it appears that the loan in question was not made as the result of competitive bidding and there was no by-law authorizing the loaning of its funds at a flat rate and the total remuneration for the loan made exceeded the authorized statutory contractual rate, the defense of usury is established,

3. HOMESTEAD ESTATE—*when mortgage does not create lien upon.* A mortgage to a homestead loan association acknowledged before an officer thereof creates no lien against the homestead estate of the borrower.

4. HOMESTEAD ESTATE—*when established.* Held, from the particular evidence in this cause, that the real estate sought to be foreclosed constituted the homestead of the mortgagors.

5. PROOF—*when appellant cannot complain of defect in.* A defect in proof induced by an objection made by the appellant's counsel, cannot be availed of on appeal by such appellant.

6. PRIORITY OF MORTGAGES—*when second mortgage prior to first.* Where the first does not legally waive the homestead estate and does not create a lien thereon, and the second does, such second mortgage is entitled to a lien upon such homestead estate, even to the detriment of the first, notwithstanding such second mortgage provides that it is subject to such first mortgage.

Foreclosure proceeding. Appeal from the City Court of Aurora; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

C. I. McNETT, for appellant; L. E. EMMONS, of counsel.

SEARS & SMITH and THEODORE WORCESTER, and FRANK G. PLAIN, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 15, 1904, the Home Building and Loan Association of Aurora, hereinafter called the association, filed its bill of complaint in the court below against George D.

McKay, Annie McKay, his wife, and the German-American National Bank of Aurora, hereinafter called the bank, to foreclose a mortgage executed to said association by said McKay and wife on December 18, 1896, under date of November 23, 1896, securing their note of the latter date for $6,000, payable ten years after date, which mortgage debt it was alleged had matured by virtue of certain defaults of the mortgagors. The McKays answered the bill, setting up usury. The original bill averred that prior to the giving of this mortgage the association had adopted a by-law dispensing with the loaning of funds of the association in open meeting to the highest bidder, and fixing a flat rate in lieu thereof. By an amendment this clause was stricken from the bill, and an allegation was inserted that this money was offered in open meeting and that said McKay and wife bid therefor the rate prescribed to be paid by the note and mortgage. The bank answered the bill and filed a cross-bill for the foreclosure of the second mortgage held upon the premises, which second mortgage it averred was a prior lien to the mortgage of the association upon the homestead interest of the McKays in the premises. The chancellor heard the proofs, found the loan of the association usurious, applied all payments made to it by the McKays upon the principal debt, found a small sum still unpaid, for which there was a decree of foreclosure, found that the premises were the homestead of McKay and wife, that the homestead was not released to the association, that the homestead was released in the mortgage to the bank, and gave the bank a first lien upon the sale of the proceeds of the homestead interest. From that decree the association prosecutes this appeal.

The appellant association was organized in 1882 under the statute of this state providing for homestead loan associations. Under the provisions of that act McKay and wife in order to obtain this loan necessarily became stockholders in the association. It is first contended by the association that a stockholder in a building and loan association cannot set up the defense of usury to defeat a con-

tract of this character. We think that position sufficiently refuted in Borrowers and Investors Building Association v. Eklund, 190 Ill. 257. It is next urged that the McKays did not sufficiently plead usury in their answer. In their original answer the McKays denied that the association had passed any by-laws dispensing with the loaning of the funds of the association in open meeting to the highest bidder or that they had prior to making said loan passed any resolution to that effect, and they alleged that the loan was not made pursuant to a bid in open meeting by the defendants, or either of them, or by any person for them, and alleged that under the laws governing the association the contract they made was illegal and the amount paid by them as premiums should be credited on the principal, and also all fines and forfeitures paid by them; that the loan was not made in accordance with the by-laws of the association; that the premiums and the illegal rate of interest charged by the association to said defendants constituted usury under the laws of the State of Illinois: that on account thereof the association had forfeited all right to any interest whatever upon said loan; that all payments made by them on account of said loan should be applied in reduction of the principal, and that on a fair and equitable accounting it would be found they had fully paid the loan and were not indebted to the association in any sum whatever. The McKays afterwards filed an amendment to their answer in which they alleged that the note was signed and delivered on December 18, 1896, but was dated back to November 23, 1896, and made to bear interest from November 23, 1896, instead of from December 18, 1896; that the $6,000 was advanced to defendants on December 18, 1896; that the said note bears interest at seven per cent. per annum by the terms thereof; and that the association further by the terms of the said note required the defendants to pay a premium of seven twenty-fourths of one per cent. per month in addition to said seven per cent. per annum; that said seven per cent. interest together with said premium provided by said note was more than the legal rate

of interest allowed to be reserved by the contract under the statutes of this state; that said premium was but another name for interest; that in addition thereto the association had required defendants to pay it a large sum for fines, dues, penalties and forfeitures which was additional interest; that by reason of requiring said defendants to pay said seven per cent. per annum and said seven twenty-fourths of one per cent. per month premiums, and the said fines, dues, penalties and forfeitures, it has been guilty of exacting usury under the statute, and had forfeited all claim to any interest on said $6,000 and that all payments made thereon by the defendants to complainant should in equity be applied in reduction of said principal sum. We are of opinion the defense of usury was sufficiently pleaded. It is entirely clear that the association had no lawful by-law permitting it to loan money at a flat rate, and that this loan was not let by competitive bidding in an open meeting as the statute requires, and that, regardless of the effect of dating the papers back to the prior month, the defense of usury was established. It is not contended that the court made any error in fixing the amount remaining unpaid if usury was established.

The mortgage to the association was acknowledged before an officer of that association, and, therefore, although in terms it purported to release the homestead, it did not in fact have that effect, nor create a lien upon the homestead estate. Ogden Building and Loan Association v. Mensch, 196 Ill. 554; Steger v. Traveling Men's Building and Loan Association, 208 Ill. 236. It is, however, contended that the McKays had no homestead in this property at the time the mortgage to the association was executed. The premises in question consisted of a lot and a few feet of another lot in a certain block in West Aurora and a dwelling house thereon. The McKays at that time were living in a rented house. McKay purchased this property of Mrs. Danahy, and borrowed this money for the purpose of making a payment to her upon the purchase price at the time of making the purchase. The proof is that McKay told Mrs. Danahy that he desired to move in at once, so as to save having to

pay another month's rent at the place where he was living. It is argued by the association that he did not distinctly testify that he bought this property for the purpose of occupying it as a homestead. While we think that does sufficiently appear, yet if it does not, the association ought not to be permitted to take advantage of any defect of the proof on that subject, for McKay was asked by his solicitor on the witness stand if he bought the premises with the intention of making a home for himself and family, and the association objected to that question on the ground that it called for a conclusion. Hahl v. Brooks, 213 Ill. 134. The McKays did move into the premises four days after they got the deed, and we regard it as conclusively established that they bought it for the purpose of occupying it as a homestead. We regard it as clearly settled by Crawford v. Richeson, 101 Ill. 351; Boyd v. Fullerton, 125 Ill. 437; and Wike v. Garner, 179 Ill. 257, that where property is purchased for the purpose of occupying it as a homestead, followed by actual occupancy as a homestead by the purchaser without unreasonable delay, the property becomes the homestead from the instant of acquiring the title, and no lien can be obtained thereon between the instant of acquiring title and the moment of actual occupancy, on the ground that it is not homestead during that intervening period. Therefore, when the McKays executed this mortgage to the association this was their homestead, and as it was acknowledged before an officer of the association the homestead interest was not waived.

The mortgage to the bank waived the homestead. It contained these words: "This mortgage is given subject to a prior mortgage executed by the parties hereto to the Home Building and Loan Association of Aurora, Ill." It is argued by the association that because of these words it was error to permit the bank to have a first lien upon the homestead interest as against the association. In our judgment under the facts and pleadings in this case, the association has no concern in the question what becomes of the avails of the homestead. It obtained no lien upon said

Home Building & Loan Ass'n v. McKay.

homestead by virtue of its mortgage, for the reasons and under the authorities already cited. The original answer of the McKays to the bill of the association averred that the mortgage was not acknowledged by either of the McKays before an official authorized to take acknowledgments; that the alleged acknowledgment by them thereto was void in law and had no effect whatever as against their homestead rights in the property; that said property was and is the homestead of said defendants, and that said instrument did not deprive them of their homestead rights. Said defendants having pleaded that [the homestead was not cut off by the mortgage to the association, and that averment being sustained by the proofs, they would be entitled to the avails of the sale of the homestead interest, were it not for their subsequent mortgage to the bank, by which they waived their homestead. We are also of opinion that the clause in the bank mortgage making it subject to the prior mortgage to the association, only made it subject to the actual legal effect of such prior mortgage, and did not prevent the later mortgage from being the first lien upon an interest in the property which was not covered by the mortgage to the association.

Complaint is made of the ruling of the court in regard to certain answers made by a witness, but we find no reversible error in that respect. The matters called for were chiefly immaterial, and where material were properly provable by the record of the association; or said matters were established by other evidence.

We find no reversible error in the record, and the decree is therefore affirmed.

*Affirmed.*