Frank F. Follett, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 6,212.

1. RAILROADS, § 634*—*when operation of engine backwards without light in front at night in violation of ordinance constitutes negligence.* In an action against a railroad company for death, the defendant *held* guilty of negligence in running a locomotive backwards over its tracks within city limits in the nighttime without displaying a light on its advancing end, in violation of an ordinance.

2. RAILROADS, § 641*—*when backing of train over crossing without warning constitutes negligence.* Backing a train across a muchtraveled street crossing, in the nighttime, without ringing a bell or having the crossing guarded by a trainman with a lighted lantern, or by a flagman, *held* negligent.

3. RAILROADS, § 640*—*when backing of train over crossing at excessive speed constitutes negligence.* Backing a train across a street crossing at a speed in excess of that allowed by city ordinance is negligent.

4. APPEAL AND ERROR, § 1245*—*when party procuring exclusion of competent evidence may not complain of failure to establish due care.* In an action for death where competent evidence as to the sobriety, cautiousness, industriousness, prudence and carefulness of the deceased was ruled out on the defendant's objection thereto, *held* that the defendant could not be heard to argue on appeal that the plaintiff was not in the exercise of due care at the time of his death.

5. RAILROADS, § 661*—*when person about to cross track has right to rely upon obedience of ordinance in operation of train.* One about to cross a railroad at a street crossing has a right to rely upon the railroad's servants obeying city ordinances in the operation of its trains.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. DEATH, § 46*—*what may be considered on question of due care in action for death.* In an action for death the jury may, on the question of due care on the part of the deceased, consider the instinct common to man, prompting to the preservation of life and avoidance of danger.

7. DEATH, § 73*—*when instruction need not contain requirement that jury should find that deceased was in exercise of due care.* In an action for death due to defendant's negligence, an instruction relating solely to the measure of damages need not contain the requirement that the jury should find that the deceased was in the exercise of due care.

8. DEATH, § 67*—*when verdict for not excessive.* A verdict for $7,000 for the death of an able-bodied man thirty-six years old, earning $924 per year, and having at the time of his death a wife and three children, aged five, four and three years, respectively, *held* not excessive, where, though his family had gone to a foreign country, there was no evidence that he had ceased to support them.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 14, 1916. Rehearing denied May 24, 1916. *Certiorari* denied by Supreme Court (making opinion final).

STEAD, WOODWARD & HIBBS, for appellant; JOHN G. DRENNAN, of counsel.

BUTTERS & CLARK, R. C. DONOGHUE and HOWARD H. BAYNE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On May 17, 1913, after 9 p. m., an engine of the Illinois Central Railroad, backing one freight car across First street in the City of La Salle, ran down and killed Kasper Zemlik and Anton Mes. Zemlik left a widow and three children. His administrator brought this suit against the railroad company to recover damages occasioned to his next of kin by the death of said Zemlik, and on a jury trial had a verdict for $7,000. A motion for a new trial was denied, plaintiff had judgment on the verdict and defendant below appeals.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Follett v. Illinois Central R. Co., 200 Ill. App. 289.

Appellant operates a single track railroad through the City of La Salle. On the evening in question freight No. 152 came to La Salle from the south and stopped upon the bridge over the Illinois River. A short distance north of the bridge were coal chutes next west of the main track. Some distance north of that was First street. Further north on the west side of the track was the passenger station and still further north was a water tank, and beyond that were what were known as the Wallace yards. At First street, and for some distance north and some distance south of that and east of the main track, was what was called the passing track, and further east were three switch tracks and also, according to some of the witnesses, one or two spur tracks. First street was at least eighty feet wide. In the middle of the street was a plank crossing, beginning west of the main line and extending east of the east switch track, by which teams were enabled to go across the tracks. Some witnesses testified that this plank crossing was a single length of planks and the crossing was nine or ten feet wide. Others testified that there were two rows of planks abutting against each other and making the plank crossing about twenty feet wide. One witness thought it wider even than that. If the plank crossing was twenty feet wide and in the center of the street and the street was eighty feet wide, then from the south line of the plank crossing to the south line of the street was about thirty feet. A flagman's shanty stood in the street towards its south line and several feet west of the main line. Some of the witnesses spoke of the plank crossing as if that were the entire street, but other evidence shows the width of the street as above stated. The night was dark and the moon was in its first quarter, and behind clouds. There was an arc light burning about fifteen feet west of the railway, its obvious purpose being to light the plank crossing. At

the time in question a switch engine was switching freight cars back and forth over First street upon the switch tracks and the passing track. It was headed north, so that its headlight was thrown only to the north. While one or two of the crew testified that just before the accident this switch engine stopped south of First street and stood there at the time of the accident, the great preponderance of the evidence is that it pushed cars north over First street and stopped there just before the accident, and that it had had that crossing blocked for fifteen or twenty minutes by its work back and forth across that street. The engine of train No. 152 left most of its cars upon the bridge, and the engine, headed north, took a cut of cars north to the Wallace yards and there left all but one car and then backed down to the water tank and took water. It then gave several sharp whistles as a notice to the men in charge of the coal chutes that the engineer wished to take coal, and then ran down from the water tank to the coal chutes. As it crossed First street some one gave an alarm to the engineer and he stopped and they found the engine had run over Mes. When his body had been removed in an ambulance, the engine and car went on down to the coal chutes. Then the hat of another man besides Mes was found and the remains of Zemlik were discovered scattered along the right of way. Blood and indications that some object had been dragged in the cinders with which the track was ballasted began about twenty feet south of the plank crossing.

Plaintiff filed a declaration containing four counts, and later filed four additional counts, and the case finally went to the jury on the original declaration and the first and second additional counts. The first count charged that appellant's servants so negligently drove and managed said locomotive and car that Zemlik was thereby killed while walking across the railroad. The

second count charged that appellant failed to comply with the statute requiring railroads to cause a bell to be rung or a whistle to be sounded beginning at eighty rods from the place where a railroad intersects a public highway, and to keep the same ringing or sounding until the highway is reached, and that by that failure the death was caused. The third count charged that many people constantly crossed the railroad upon that street, and that this made it the duty of appellant to station a flagman at said crossing or to provide some other means of warning people traveling along said highway, and that this was not done, and that this omission was negligence and caused the death of Zemlik. The fourth count charged that the locomotive and cars were driven over said street at a greater speed than was reasonably safe at that place, and that said speed was negligent and dangerous, and caused the death of Zemlik. The first additional count set up an ordinance of the city, forbidding that any locomotive engine attached to any freight car should be driven upon any railroad track in that city at a greater rate of speed than six miles per hour, and charging a violation of said ordinance and the consequent death of Zemlik. The second additional count set up an ordinance of said city, requiring a locomotive engine or railroad car, running in the nighttime, on any railroad track in said city, to have and keep while so running a brilliant and conspicuous light on the advancing end of such engine or car, and a violation of this ordinance and the consequent death of Zemlik. Each count alleged due care by deceased for his own safety. The plea was the general issue. The ordinances so declared upon were in evidence. This engine headed north and, with its headlight showing to the north, was backing south with one freight car ahead of it, and it had no light of any kind on the advancing end. It therefore was guilty of negligence by its violation of

said ordinance, as charged in the second additional count. Zemlik and Mes lived east of the railroad, as did many other people, and had been down to the center of the town, about one mile west, that evening and were returning home. They were evidently stopped by the street being blocked on the switch tracks by the switch engine at work there. Witnesses saw two men standing on or near the main track a few minutes before the accident, and these were evidently Zemlik and Mes waiting until the switching crew gave them an opportunity to cross over. The jury could reasonably find that if the ordinance requiring a conspicuous light on the advancing end of the freight car had been obeyed, they would have been warned thereby of the approach of the car and would have escaped injury. Appellant makes no answer to this charge of negligence. In *Ehrlich v. Chicago Great Western R. Co.*, 160 Ill. App. 379, we cited authorities from which we drew the conclusion that the absence of a headlight from a moving train in the nighttime tended to show negligence in the operation of the train. We see no reason why this rule should not be applied to a freight train moving backwards in the nighttime without a light on its advancing end. *Chicago & A. R. Co. v. Garvy*, 58 Ill. 83; *Lake Erie & W. Ry. Co. v. Zoffinger*, 107 Ill. 199; *Calumet Iron & Steel Co. v. Martin*, 115 Ill. 358, 369; *Chicago, M. & St. P. Ry. Co. v. Walsh*, 157 Ill. 672; *Baltimore & O. S. W. Ry. Co. v. Alsop*, 71 Ill. App. 54; 33 Cyc. 958. This proof therefore tended to make a case under the first count of the declaration, which charged negligent operation of said locomotive and car. The blasts of the engine whistle to give notice to the operator of the coal chutes were not a compliance with the statute concerning the ringing of a bell or the blowing of a whistle in approaching a highway crossing. No engine bell was rung by hand as the crossing was approached, but the engineer testified that before his engine left the water tank he

started an automatic bell thereon and that it rang continuously until the engine stopped after the accident. He was corroborated by some other witnesses, who testified that the bell was ringing as the engine went south over the street. A preponderance of the witnesses who were in that vicinity at the time testify to the effect that they heard no bell ringing. Some of these witnesses were disinterested. If the jury had found a special verdict that the bell was not ringing as the engine backed south, it could not have been set aside on the ground that it was unsupported by the proof. Appellant produced proof that one of the train crew went south to the crossing, carrying a lighted lantern, and gave a signal to the engineer to back up across the street, but the preponderance of the evidence seems to be that no man carrying a lighted lantern was on that crossing just before the accident. If no bell was rung and if the trainman did not guard the crossing with a lighted lantern, then another element of negligence was established. Although there was a flagman's shanty on the south side of the street and west of the railroad, no flagman was on duty that night, and there was evidence that people and teams were crossing the railroad on that street almost constantly, and the jury might reasonably have decided therefrom that under those conditions it was negligence not to have that crossing guarded by a flagman at night. Some of the trainmen testified that this engine went across the street at a speed of three or four miles per hour, but the apparent preponderance of the evidence is that the speed was in excess of that permitted by the ordinance, and, if so, another ground of negligence was established against the company. Appellant does not seriously contend that it was not negligent or that its negligence did not contribute to the death of deceased.

Appellant contends, as its chief ground for a reversal of the judgment, that appellee did not show that

Zemlik was in the exercise of due care for his own safety, and that it affirmatively proved that he was not in the exercise of such due care. Appellee introduced evidence that Zemlik was a careful man, and the court excluded it, and that he was not a drinking man, and this was permitted to stand. He then sought to show by witnesses who had known Zemlik for a number of years that he was a careful, prudent, cautious, sober and industrious man. Appellant objected to this evidence and the court sustained the objection and this evidence was thereby kept from the jury. Appellant argues that this evidence was not competent. No one saw Zemlik and Mes struck or killed. No one knows exactly where they were when they were struck. Two men, evidently these two, were seen at the crossing before the engine started south. It was shown that they were on their way home, and it is evident that they stopped because the side tracks were blocked by the work of the switching crew, one of whom testified that just before this engine started south the switch engine and the various cars it was handling had blocked the crossing for fifteen or twenty minutes. Appellant contends that it proved that, when so seen, they were standing between the rails of the main track. One witness did so testify, and another is made to appear so to testify by the abstract, but an examination of his testimony in the record shows that he did not so state, and another stated that he did not know whether they were between the rails or not, and still others only located them at or about the crossing. The case of *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29, is much like this case. There plaintiff's intestate was killed upon a street crossing while going towards home by his usual route. He was last seen a minute before he was struck, standing on the crossing between the rails of the west track and waiting for the passage of a train on the east track. The court said that it was reasonable to suppose that his attention was directed to the train which

obstructed his way and that he expected no train on
the west track while the other train was standing in
front of him, and that the evidence tended to show that
he was acting reasonably in pursuance of his purpose
to go home as men ordinarily act under like circum-
stances. The court said that the fact that he was
standing between the rails was a circumstance to be
considered by the jury with all other facts in deter-
mining whether he used ordinary care, but was not
conclusive proof of negligence; that he had a lawful
right to be upon any part of the crossing, and whether,
under all the circumstances, he exercised proper care
for his personal safety in being between the rails was
a question of fact. It was there held that proof that he
was a sober, industrious man, possessed of all his fac-
ulties, also tended to prove that he was in the exer-
cise of proper care, and that when no one saw the kill-
ing, due care may be inferred from the circumstances.
In *Chicago, B. & Q. R. Co. v. Gunderson,* 174 Ill. 495,
·where plaintiff's intestate was killed by being struck
by a moving train while he was upon the railroad
track, the court held, as competent, proof that he was a
steady, sober and industrious man, in good health and
so situated that it was fairly inferable that the in-
stincts of self-preservation were as strong in him as
in other men, and it held that these facts of themselves
largely tended to prove that he exercised due care.
In *Illinois Cent. R. Co. v. Prickett,* 210 Ill. 140, plain-
tiff's intestate was killed by the explosion of his en-
gine, and no other person was in the cab so .that he
could see the acts and conduct of the engineer, except
the fireman, who was also killed by the explosion.
Other witnesses saw the engine explode but they could
not see what the deceased did at the time of and im-
mediately before the explosion. The court held that
proof was properly admitted to show the general rep-
utation of the deceased as a careful and competent
engineer and a sober man, and that such testimony

tended to show that he exercised ordinary care at the time of the explosion. The same rule has been followed in numerous other cases. Appellant cites cases in answer to this, but we do not find them applicable so far as they use any different language. In reality they confirm what was said in the cases which we have cited. If the proof now under discussion had been admitted it would under these authorities have tended to prove that Zemlik was in the exercise of due care at the time he was struck, and it may be the jury would have considered it sufficient proof of that allegation in the declaration. Appellee was prevented from having the benefit of this proof by the objections and motions to exclude made by appellant. "Appellant cannot be heard to object that a fact was not proved where the proof was prevented by his objection." *Hahl v. Brooks,* 213 Ill. 134; *Chicago & A. R. Co. v. Walker,* 118 Ill. App. 397, 402, and cases there cited; *American Ins. Co. v. Meyers,* 118 Ill. App. 484; *Rock Island County v. Rankin,* 118 Ill. App. 499; *Home Building & Loan Ass'n v. McKay,* 118 Ill. App. 586. Therefore appellant cannot be heard to argue here that the evidence does not show that Zemlik was in the exercise of due care. But, aside from that, when all the evidence is considered, we think the jury were warranted in finding for appellee on that subject. The switch engine and the various cars it was moving were passing back and forth across this highway over which he wished to travel. The switch engine was bumping into cars frequently, and it made much noise in reversing from time to time. All this tended to distract the attention of Zemlik from the engine standing on the main track north of him. Zemlik also had a right to rely upon appellant to obey the city ordinances. *Illinois Cent. R. Co. v. Gilbert,* 157 Ill. 354; *Baltimore & O. S. W. Ry. Co. v. Then,* 159 Ill. 535; *East St. Louis Connecting Ry. Co. v. Eggman,* 170 Ill. 538; *Dukeman v. Cleveland, C., C. & St. L. Ry. Co.,* 237 Ill. 104; *Elgin*

*City Banking Co. v. Chicago, M. & St. P. Ry. Co.,* 160 Ill. App. 364, 375. He had a right therefore to rely upon it that no engine or car would approach that crossing in the nighttime without a conspicuous light upon its advancing end and without the blowing of a whistle or the ringing of a bell, and that no engine with a freight car would come to that place at a greater speed than six miles per hour. In determining this question of due care the jury had a right to consider also the instinct common to man, prompting to the preservation of life and the avoidance of danger.

Complaint is made of the second instruction, given at the request of appellee, which was to the effect that if the jury found the defendant guilty of the negligence charged and that the same resulted in the death of Zemlik, then plaintiff was entitled to recover for the benefit of the widow and next of kin such damages as the jury considered from the evidence just compensation for the pecuniary injuries, if any, which the evidence shows that the widow and next of kin sustained by reason of said death. It is contended that this omits the element of due care. We regard such an instruction as open to criticism, and would much prefer an instruction which began: "If you find for the plaintiff under the evidence." But from an early day the Supreme Court has held that instructions substantially in this form relate solely to the measure of damages and need not contain the requirement that they should find that the plaintiff or the deceased was in the exercise of due care. Among such cases are *Illinois Cent. R. Co. v. Gilbert,* 157 Ill. 354; *Elgin, J. & E. Ry. Co. v. Thomas,* 215 Ill. 158; *Bonato v. Peabody Coal Co.,* 248 Ill. 422, and many other cases cited in the foregoing. Under these authorities it was not error to give said second instruction.

It is argued that the verdict was excessive and that for that reason a new trial should have been awarded. Zemlik was thirty-six years old at the time of his death

and was a healthy and able-bodied man. He had an employment at which he worked fourteen days and fourteen nights each month at $2.75 per day or night, which if he worked all the time would bring him $924 a year. He married his wife in LaSalle and left a widow and three children, who at the time of his death were aged five, four and three years. Considering his reasonable expectation of life, no one could say that his widow and children would not have been benefited in the amount of this verdict before the children had reached their majority. The widow and children went to Austria ten months before his death, but there is nothing to show that this was without his consent or that he failed to support them thereafter, and the fact that they had gone to Austria does not seem to us to change their rights in any respect. The jury might have found a less sum as damages, but we cannot say from the evidence that they should have done so, or that they erred in fixing the amount they did.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*