# Frank F. Follett, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

## Gen. No. 6,530.

1. DEATH, § 46*—*when evidence as to habits and faculties of deceased is admissible.* Where no one saw decedent at the time he was struck by defendant's train at a street crossing, evidence that he was a sober and industrious man and possessed of the ordinary faculties of a man was admissible, in an action to recover damages on account of his death.

2. RAILROADS, § 738*—*when evidence is insufficient to show intoxication of deceased.* Testimony that decedent on the afternoon of the day he was struck by defendant's train at a crossing had a glass of beer on his way home, at the supper table five cents' worth of beer, and in the evening a small beer, that he was not then under the influence of liquor, and testimony of his boarding-house keeper that she never knew him to be intoxicated, *held* not to warrant a finding that decedent was intoxicated at the time he was killed that evening.

3. RAILROADS, § 738*—*what is proof of exercise of ordinary care at time of accident.* Proof that decedent was not intoxicated at the time he was struck by defendant's train at a crossing, and the instincts of self-preservation common to mankind, tended to prove he was in the exercise of ordinary care at the time, in an action to recover damages on account of his death.

4. RAILROADS, § 738*—*when finding that decedent was in exercise of due care at the time of being struck by defendant's train not disturbed.* Evidence *held* insufficient to warrant disturbing the finding that decedent was in the exercise of due care at the time he was struck by defendant's train at a crossing, in an action to recover damages on account of his death.

5. RAILROADS, § 733*—*when evidence shows that decedent was struck while on street.* Evidence *held* insufficient to show that the street on which plaintiff's intestate ·was alleged to have been struck by defendant's train was confined to the plank on the crossing, and to show that deceased was struck while on the street.

6. RAILROADS, § 772*—*when instruction on what constitutes width of street crossing railroad tracks is properly refused.* An instruction that the width. of a certain street was defined by the length of the planks crossing the lands and grounds of defendant at a public crossing of defendant's tracks, *held* properly refused

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Follett v. Illinois Central R. Co., 209 Ill. App. 81.

where. there was evidence from which the jury might reasonably conclude that the street extended beyond both ends of the planks, in an action to recover damages for the death of plaintiff's decedent.

7. DEATH, § 50b*—*when evidence is sufficient to prove relation of husband and wife.* Evidence *held* sufficient to prove the relation of husband and wife by reputation, in an action to recover damages on account of the death of the husband.

8. DEATH, § 49*—*how marriage may be proved.* Marriage may be proven by reputation, in an action to recover damages on account of the death of the husband.

9. DEATH, § 1*—*when of wife not presumed.* Where decedent was shown to have had a wife 3 years before his death, who was then young, her death could not be presumed.

10. DEATH, § 50b*—*what is prima facie proof that decedent left surviving widow and children.* Proof that decedent 3 years before his death had a young wife and minor children who would, if living, still be minors at the time of his death, *held* prima facie proof that decedent left surviving a widow and such children.

11. DEATH, § 49*—*when order of Probate Court establishing heirship is admissible.* An order of the Probate Court made 2 days before trial of an action in the Circuit Court to recover damages on account of the death of plaintiff's decedent, establishing the heirship in the decedent's estate, was competent evidence in such action, where the Probate Court had jurisdiction of the estate and appointed an administrator before such action was commenced.

12. DEATH, § 80*—*when incompetency of evidence of heirship is immaterial.* The incompetency of evidence tending to show heirship in decedent's estate was immaterial where prima facie proof to the same effect already existed.

13. EVIDENCE, § 14*—*what judicially noticed.* Judicial notice is taken that. a certain foreign country was involved in a great war long before trial preventing the taking of depositions of witnesses residing in that country.

14. DEATH, § 4*—*what does not affect presumption of life of minors.* The existence of a great war in which a foreign country was involved did not affect the presumption of life of persons who were then minors.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed February 12, 1918. *Certiorari* denied by Supreme Court (making opinion final).

WOODWARD & HIBBS, for appellant; JOHN G. DRENNAN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

R. C. DONOGHUE, BUTTERS & CLARK and HOWARD H. BAYNE, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Illinois Central Railroad passes through the eastern part of the City of LaSalle in a direction substantially north and south and has one main track approaching LaSalle from the south, which track crosses a bridge over the Illinois River. Shortly after leaving the river going north there are coal chutes on the west side of the main track. A few hundred feet further north the road crosses First street in the City of LaSalle. A short distance north of that on the west side of the track is a depot. Some distance north of that is a water tank and further north are certain tracks called the Wallace yards. At First street there is a track west of the main track, but it does not extend as far north as the depot. The first track east of the main track was a passing track, and further east were switch tracks and spur tracks, all crossing First street. Second street and Third street did not cross the railroad tracks, and the next street north of First street and crossing the tracks was Fourth street, three blocks distant. East of the railroad were quite a number of homes, and there were also homes north of First street and east of the railroad from which people came on First street to go down town. The main business part of the city was something like a mile west of this crossing. On the evening of May 17, 1913, freight train No. 152 came from the south, left a part of the train on the bridge, and the engine went north to the Wallace yards with several freight cars and left all but one of them there, and then with that one car backed down to the water tank, and afterwards went south to the coal chutes to take coal. On crossing First street the car and engine ran over and killed Kasper Zemlik and Anton Mes. Zemlik was

cut to pieces and instantly killed, but the body of Mes fell outside of the tracks to the west and his legs were nearly cut off and he was taken to a hospital where he died the next day. Follett was appointed administrator of the estate of each of these deceased persons and brought suits in those capacities against the railroad company. In the *Zemlik* case the recovery of a judgment by plaintiff was reviewed by us in *Follett v. Illinois Cent. R. Co.*, 200 Ill. App. 289. We there discussed at great length the pleadings and the evidence and the rules of law governing the parties. The case now before us is the one brought by Follett as the administrator of Mes. The pleadings in this case are substantially the same as in the *Zemlik* case, *supra,* and were stated fully in our former opinion and need not be repeated here. In the main the evidence was the same, although some witnesses varied slightly from their former testimony. In the main the same rules of law are applicable. We therefore here refer to the opinion in the *Zemlik* case for much of the evidence and for a statement of the rules of law governing the case and the numerous authorities there cited to sustain the same. There are certain important differences which will be discussed hereafter. Plaintiff here recovered a verdict and a judgment for $6,000 for the benefit of the next of kin of the deceased, and this is an appeal by the defendant.

An ordinance was pleaded and proved which required every locomotive engine, railroad car or train running in the nighttime on any railroad track within the City of LaSalle to have and keep while so running a brilliant and conspicuous light on the advancing end of such locomotive engine, car or train of cars. It was proved and not controverted that this freight car, pushed south over this First street crossing by the engine whose headlight projected to the north, did not have upon its advancing end any light of any kind when this car struck and killed these two men. Except

Follett v. Illinois Central R. Co., 209 Ill. App. 81.

for the question whether Mes was negligent, which we
discuss hereafter, this proof made an undisputed
cause of action for the appellee. Another ordinance
pleaded and proved prohibited the running of any lo-
comotive engine attached to a freight car at a greater
rate of speed than 6 miles an hour. There was a dis-
pute in the testimony as to the speed of this engine
and car as it crossed First street going south. The
evidence of appellee tended to show that it ran across
First street at the rate of 8 miles per hour. This
proof tended to establish a cause of action against the
appellant under that ordinance. Another count
charged a failure to comply with the statute by ring-
ing a bell or blowing a whistle when approaching a
public highway. Three minutes before this engine
started from the tank to go south, it blew several
sharp blasts of the whistle, but it was not a highway
signal and it was not so intended, but these signals
were given to·notify the man at the coal chutes how
much coal the engineer desired to take on. No whistle
was blown from three minutes before the engine left
the tank until after these men were killed. Appellee
introduced proof tending to show that no bell was
rung by this engine while it made that trip from the
tank to the street. It was admitted that no bell was
rung by hand on that engine, but the engineer testi-
fied that he started an automatic bell when he left the
tank and kept it ringing, and appellant had other wit-
nesses who testified the bell was rung. If the jury
believed the witnesses for appellee on that subject,
then this established the cause of action stated in that
count. The proof so far referred to also tended to
establish a cause of action under the count which
charged that appellant so carelessly and negligently
operated said locomotive that Mes was thereby killed.
There was proof tending to show that this crossing
was much used by the general public as well as by the
railroad company on its switch tracks, and this proof

tended to show that such conditions existed at that crossing as required that a flagman should be placed there at night, or some other means employed to warn the public of approaching cars and trains. There was a flagman's shanty on the south side of the street at this point but it was not occupied on this night. This proof tended to establish a cause of action under another count of the declaration. The evidence concerning the speed of the engine and car also tended to establish the count which charged that they were run at an unreasonable and dangerous rate of speed. Appellant contends that one of its employees carrying a lighted lantern went to this crossing before the engine and car backed down and stood there and guarded the crossing at the time. Several witnesses for appellant gave evidence tending to sustain this contention. Several witnesses for appellee gave evidence tending to show that no man was there with a lighted lantern guarding the crossing. If he had been there as claimed, it is very difficult to understand why he did not see these men and why he did not warn them or stop the engine and car by proper signaling. Under all the evidence, we think the jury were warranted in finding that no such man was at the crossing with a light guarding the crossing while this engine and car went south. The main defenses urged are that Mes himself was guilty of negligence which contributed to his death; that the street was confined to the planked part of the crossing and that Mes was south of the planks and a trespasser upon the private grounds of the railroad company when he was struck; and that there was insufficient and incompetent proof of the existence of the next of kin.

Each count of the declaration charged that Mes was in the exercise of due care for his own safety. The verdict for appellee was therefore a verdict that he was in the exercise of due care. In determining whether the jury were warranted by the evidence in so finding,

it is to be remembered that while almost every one in that vicinity who testified knew that this train had stopped on the bridge, that the engine and a few cars had gone north to the Wallace yards and that the engine and one car south of it had backed down to the tank, and knew that the several sharp blasts indicated how much coal the engineer desired to take on at the coal chutes, and knew that this engine and car would soon back across First street to the coal chutes, yet there is nothing to indicate that either Zemlik or Mes knew any of these things. They lived east of the tracks and worked day times and had gone down town on First street after supper and were on their way home, and evidently reached these tracks after the engine had gone north, and they evidently knew nothing about that situation. If they saw there was an engine and car at the tank (and there is no proof that they did), then they also saw that this headlight was shining towards the north, and there is nothing in the proof which should have caused them to expect that an engine and car were going to be backed south across First street. They were halted at the railroad tracks by a switch engine and cars passing back and forth constantly over First street, east of this main track. That fact makes it plain that they were waiting for a convenient opportunity to go across without being in danger from the switch engine and cars. The switch engine was ringing its bell, it was being reversed and the cars were bumping into each other on each side of the street, and all this tended to distract their attention from the situation on the main track, and if a bell was rung on the engine of train No. 152 as it backed south, the noise and confusion of the bell on the other engine and of the reversing and bumping might have prevented or excused them from hearing it. The authorities we cited in our former opinion showed they had a right to rely upon the ordinance which required a brilliant and conspicuous light on

the advancing end of any locomotive or car which might approach that crossing in the nighttime on the main track. They had a right to rely upon an obedience to the ordinance which limited the speed of any such engine and car to 6 miles per hour. Appellant contends that the proof establishes that they stood all the time between the two rails of the main track. This is mainly founded on the testimony of one witness, and his evidence, when read in the record, shows that that is not exactly what he meant. He meant that they were standing at or near the main track. When asked if they were standing between the rails, he said they must have been when they were struck, and he repeated that statement. We conclude from his whole evidence that he meant, not that he absolutely saw that they were between the two tracks, but that he reasoned and, of course, correctly, that they must have been there when they were struck. If they were standing between the rails before they were struck, still the situation was very much like that existing in *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29, on which we commented in our former opinion. If Mes was between the rails then it is also to be remembered that where a crossing is planked for the passage of vehicles, the rails project very slightly above the surface of the planks, and are not nearly so noticeable to the eye as where there is no planking or ballast. There was a light in the street west of this crossing, but there is nothing to indicate that that would assist a person on the crossing to see an approaching car. Its office apparently was to enable a person on the car or engine approaching to see persons and teams at and about the crossing. Appellant argues that Mes was intoxicated. The proof shows that on his way home that afternoon he had a glass of beer, and at his supper table he had five cents' worth of beer, and while down town that evening, he got a "small beer." The woman who sold him that testified that he was not

under the influence of liquor. The woman who kept his boarding house testified that she never knew him to be intoxicated. This evidence did not warrant the jury in finding that he was intoxicated at the time he was killed. No one saw Mes at the time he was struck. This therefore permitted evidence, which was introduced, showing that he was a sober and industrious man, possessed of the ordinary faculties of a man. This proof, and the instincts of self-preservation common to mankind, tend to prove that he was in the exercise of ordinary care at the time, as held in the *Nowicki* case, *supra*, and in *Chicago, B. & Q. R. Co. v. Gunderson*, 174 Ill. 495; *Illinois Cent. R. Co. v. Prickett*, 210 Ill. 140, and in many other cases. The verdict of the jury that Mes was in the exercise of due care cannot be disturbed here on the ground that it is not supported by the evidence.

Each count of the declaration charged that this accident occurred upon First street. Appellant contends that under the proofs First street was limited to the planked crossing provided for the passage of vehicles over the railroad. The proof as to the width of the crossing varied. Some put it at about 12 feet, the length of a single plank, and others put it at various larger lengths up to 32 feet. A witness who measured it just before the trial put it at 32 feet 6 inches, and another witness testified that it had not been changed since the accident. The proof seems to show that the width of this crossing was not the same all the way across the railroad tracks but varied in width. Several witnesses on each side testified that the plank crossing was in the middle of the street. This is inconsistent with the present claim that the street was confined to the plank crossing. To say that the crossing was in the middle of the street, or nearly in the middle of the street, as one says, or a little to one side, implies parts of the street on each side of the crossing. First street had curbs from the west up nearly to this

crossing, and those curbs were testified to by some witnesses as being 60 feet apart, and by others 40 feet apart. The curb does not mean the boundaries of the street, but it means the boundary of the space provided for the travel of vehicles. The whole evidence considered, we are of opinion that the proof does not warrant the contention of appellant that the public street was confined to the plank on the crossing. The importance of this is that appellant contends that Mes was struck south of the planked crossing and therefore off the street and on the private right of way of appellant, where he was therefore a trespasser, and appellant had no duty except not to wilfully injure him. A car hitting Mes when going at a speed of 8 miles per hour would be likely to throw him some distance. There is evidence tending to show the existence of blood and of a disturbance of the ballast between the tracks only a short distance south of the plank crossing, and we are of opinion that the whole evidence considered, the truth might have been that he was on the plank crossing when struck, and, if not, that he was only a very short distance south thereof, and we conclude that a finding that he was struck on First street is warranted by the proof. In this connection appellant argues that the court erred in refusing its instruction No. 27. It was framed to tell the jury that the width of the public crossing at the point in question was defined by the length of the planks crossing the lands and grounds of the appellant but did not at said time extend either north or south of said planks. As already seen, there was evidence from which the jury might reasonably conclude that the public street extended both north and south of these planks, and it therefore would have been error for the court to take this question of fact from the jury by that instruction. Moreover, appellant's instructions Nos. 19, 20 and 21 stated the law on that

Follett v. Illinois Central R. Co., 209 Ill. App. 81.

subject as favorably to appellant as it was entitled to have given.

Each count of the declaration averred that deceased left surviving him his wife and children as his only heirs at law and dependent upon him for support, and that they had each been injured in their means of support by his death. Additional counts gave the names as Mary Mes, the widow, and John Mes, Wadislaw Mes and Anna Mes, the children. The proof shows that the deceased came to the United States from Austria, which was the country of his nativity, and that he returned to Austria a few years before his death and spent a year there. John Ficek testified that he knew Anton Mes in Austria and knew that he had a wife and children, but did not know the wife and had not seen the children. Peter Mes testified that he was a brother of deceased; that he knew his brother was married; that Anton visited Austria for a year some 3 years before he was killed; that the witness knew Anton was married but once; that he knew Anton's wife when he was there the last time, which was 7 years before the trial. As the trial was in 1917, that made it that the witness was there in 1910. He testified that at that time he also saw the three children, and he gave their names and their ages, and showed that all of them were minors. He did not claim to have been present at the marriage, but it was held in *Conant v. Griffin,* 48 Ill. 410, that it is sufficient to prove the relation of husband and wife by reputation. It therefore was proved positively that Anton Mes had a wife and three children named, the children being minors, 3 years before his death, but whose ages were such that, if living, they were still minors at his death. Appellee was also entitled to the presumption of life arising from this proof. 2 Chamberlayne on the Modern Law of Evidence, sec. 1034, says that life will be presumed to continue so long as under the conditions shown to exist it would be reasonable to think

it should do so. Jones on Evidence (2nd Ed.), sec. 60, states the rule thus: "When a person is shown to have been living at a given time, the continuance of life will be presumed, until the contrary is proved or is to be inferred from the nature and circumstances of the case." In 13 Cyc. 295, this presumption is thus stated: "As a general rule, when a person is shown or appears to have been living at one time, the presumption is that he is still alive, at least for such time as is not contrary to the laws of nature in respect to the duration of human life." This rule is thus stated in 10 R. C. L. 872: "When the existence of a person, a personal relation, or state of things is once established by proof, the law presumes that the person, personal relation or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question."

This presumption has been applied in this State in *Lowe v. Foulke,* 103 Ill. 58. One Henry A. Stone was mentioned in a will as if living, and in the record there reviewed he would have had an interest if he had still been living, and he was not made a party. It was held that in the absence of proof no presumption would be indulged that he had since died, and that the judgment was erroneous because of his absence from the record. In *Chicago & A. R. Co. v. Keegan,* 185 Ill. 70, one Augustus Griffin had given one Edward Griffin a power of attorney to convey real estate, and there was in evidence a deed by Augustus Griffin by said attorney in fact dated more than 5 years later. It was objected that it was not shown that Augustus Griffin was alive when this power of attorney was used more than 5 years later. The court held that as Augustus Griffin was alive when he gave this power of attorney, the law would presume in the absence of proof to the contrary that he was living at the later time when the deed was executed in his name. In the

case before us the oral proof already recited also
showed the age of the widow at the time she was last
seen by the witness in Austria, and showed that she
was young, so that no presumption of death by old age
could be indulged. This oral proof, coupled with the
presumption above stated, made a prima facie case
that deceased did leave this widow and these three
children surviving him. There was no testimony to
the contrary. Peter Mes also testified that about a
month after Anton was killed he received a letter from
the widow, which showed her existence, and spoke of
these children. He testified through an interpreter
and it was difficult to make him understand all the
questions. He testified that he did not know her hand-
writing but that he had seen her write, and that he
knew that the signature to this letter was hers. The
court refused to exclude this testimony. The court
admitted in evidence an order of the Probate Court
made 2 days before this trial began, establishing the
heirship in the estate of Anton Mes, deceased. It is
claimed that this was incompetent under *Nolan v.
Barnes,* 268 Ill. 515. In that case the Circuit Court
had jurisdiction of the question who were the heirs at
law in that case before the Probate Court had such
jurisdiction, and therefore the order of the Probate
Court was held to be a nullity so far as that suit in
the Circuit Court was concerned. In *Prescott v. Ay-
ers,* 276 Ill. 242, such an order of the Probate Court
was treated as competent evidence. In the case be-
fore us, the Probate Court had jurisdiction of the es-
tate and appointed an administrator before this suit
was begun, so that no reason appears why the order
of the Probate Court should not be treated as com-
petent. We, however, think it adds nothing to the
other proof. It is not claimed that appellee had any
proof to present to the Probate Court 2 days before
the trial began that he did not have during the trial of
this case, and we have no doubt that Peter Mes testi-

fied there as he did here. But we consider it immaterial whether any or all of this testimony about the letter and the order of the Probate Court was competent, because the competent testimony already mentioned made a prima facie case of the existence of the widow and next of kin, and that the widow was not beyond middle age and the children were minors, and the presumption was thereby created that they were still alive. We take judicial notice that long before this trial was had, Austria was involved in a great war, and it is undoubtedly true that neither appellee nor appellant could have taken depositions in that country, after that war broke out, upon the subject of that heirship. If the son or sons of deceased had been of military age, it may be that the circumstances of that war would have lessened the presumption of the continuance of life of those who were in the army, but as they were minors, no reason is perceived why the presumption of life should be affected by the war.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*